UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JANICE WILLIAMS, ET AL                         CIVIL ACTION NO. 08-cv-0772

VERSUS                                         JUDGE HICKS

INGERSOLL-RAND CO., ET AL                      MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

**Introduction**

This auto accident personal injury case, which has been pending for more than two years, is a few weeks away from the scheduled trial date. Two defendants recently filed a Motion to Amend Pretrial Order (Doc. 93) to add a new witness who was not disclosed in any pretrial discovery or other proceedings. The plaintiff responded with a Motion for Sanctions (Doc. 95) based on the nondisclosure. For the reasons that follow, the motion to amend will be denied. The motion for sanctions will be granted, but only by barring any testimony, direct or indirect, from the witness.

**Background Facts**

Janice Williams ("Plaintiff") was traveling north on Airline Highway in Bossier City. The highway features two lanes of travel in each direction, plus a center turn lane. Plaintiff entered the center turn lane to make a left turn into a service station. Meanwhile, David Gaitsch, who was visiting the area on business, was also traveling north. He was driving in the left or inside northbound lane. Gaitsch needed to make a U-turn because he had

mistakenly exited I-20 one exit early. Gaitsch made the U-turn at about the same time Plaintiff turned left towards the service station. The front of Gaitsch's Monte Carlo hit the passenger side of Plaintiff's Mercedes as the Mercedes was crossing the right, southbound lane.

There is a dispute as to whether Gaitsch commenced his U-turn from the left northbound lane or moved into the center turn lane before beginning the turn. The parties have not briefed the substantive law or traffic safety requirements on the issue, but they appear to agree that this disputed fact is important to the issue of liability.

The accident report reflects that Gaitsch stated that he made the turn "crossing the center turn lane" and hit Plaintiff as he was completing his turn. Gaitsch later testified, in answer to Interrogatory No. 2, that he "moved to the left lane prior to making a left turn" to return to the Interstate. He adds that "[w]hile in the left lane, he observed that traffic was clear for him to execute a left turn," and he did so. Gaitsch initially testified at his deposition that he started his U-turn in "the lefthand lane going north." He explained that he originally planned to turn left onto a small side street, turn around, and return to Airline Highway. He saw that there was no on-coming southbound traffic, so he decided to do a U-turn instead. He was then asked specifically if he started the maneuver from the left northbound lane. Gaitsch answered:

> No. Well, I was traveling north in the left lane knowing full
> well that I was going to turn. I had maneuvered into the turn
> lane, then did this turn.

Gaitsch was reminded that he earlier said he started the U-turn from the lefthand lane. He said he guessed he should have said the lefthand turn lane.

Plaintiff and her husband filed suit against defendants including Gaitsch and his employer, Zeks Compressed Air Solutions, LLC. The parties recently filed a pretrial order and held the pretrial conference with Judge Hicks. Trial is set for September 6, 2011.

Zeks and Gaitsch filed on June 29, about three weeks after the pretrial conference, a Motion to Amend Pretrial Order (Doc. 93) by which they propose to add as a witness Robert Fisher, the general manager of Zeks. Defendants represent that Fisher did not witness the actual impact of the two cars, but he was following Gaitsch in another car and saw a portion of Gaitsch's maneuver that preceded the collision. Defendants state that this maneuver "is of great importance and is likely the most disputed aspect of this case." Plaintiff opposes the motion and has filed her own Motion for Sanctions (Doc. 95) based on the non-disclosure of Fisher during the pretrial proceedings.

**Amendments to the Pretrial Order**

"The court may hold a final pretrial conference to formulate a trial plan, including a plan to facilitate the admission of evidence." Fed. R. Civ. Proc. 16(e). "The court may modify the order issued after a final pretrial conference only to prevent manifest injustice." Id. "[I]n the interest of justice and sound judicial administration, an amendment of a pretrial order should be permitted where no substantial injury will be occasioned to the opposing party, the refusal to allow the amendment might result in injustice to the movant, and the

inconvenience to the court is slight." DP Solutions, Inc. v. Rollins, Inc., 353 F.3d 421, 435 (5th Cir. 2003), quoting Sherman v. United States, 462 F.2d 577, 579 (5th Cir. 1972).

**Analysis**

Rule 26 required Gaitsch and Zeks to provide the other parties with the name and contact information "of each individual likely to have discoverable information - along with the subjects of that information - that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. Proc. 26(a)(1)(A)(i). The parties stated in their Case Management Report (Doc. 34) filed in December 2008 that all parties would exchange initial disclosures within 30 days. There is no indication that Zeks or Gaitsch disclosed Mr. Fisher during that process. Zeks and Gaitsch did list Fisher in a supplemental Rule 26 disclosure they served at about the same they filed their Motion for Leave to Amend. Doc. 98, Exhibit C.[1]

Rule 37(c)(1) provides that if a party fails to provide information or identify a witness as required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence ... at a trial, unless the failure was substantially justified or is harmless." In addition to or instead of this sanction, the court may order payment of reasonable expenses and attorney fees caused by the failure, inform the jury of the party's failure, and impose other appropriate sanctions.

---

[1] The certificate of service on the amended initial disclosures states that the document was served in July 2010. Counsel maintains that he only learned of Fisher's involvement in June 2011, so this appears to be a typographical error.

The initial disclosures did not provide Gaitsch's only opportunity to disclose Mr. Fisher. Interrogatory No. 16, answered in July 2008, asked Gaitsch if he knew "of any witnesses to the accident" at issue. Gaitsch answered, "the only known witnesses are those listed on the Uniform Motor Vehicle Traffic Crash Report." Fisher was not listed on that report. Interrogatory No. 17 asked Gaitsch to identify all witnesses he planned to call on his behalf at trial, but Gaitsch objected to the interrogatory as premature. The Scheduling Order provided for an exchange of witness lists in June and July 2009. (It is ordinarily at this point that parties disclose the kind of information asked for in Interrogatory No. 17.) The Scheduling Order (Doc. 40) directed Plaintiff to begin the exchange by delivering "a witness list setting forth the name, address, and a brief summary of each witness's expected testimony." Defendants were to serve their list a few days later. There is no indication that Fisher was identified on any defendant's witness list.

Gaitsch mentioned Fisher during his deposition but gave no hint that Fisher was following behind him just before the accident. When Gaitsch was asked how he told his employer, Zeks, about the accident, he said he went over it with his boss, Bob Fisher, who still served as general manager. Plaintiff was later asked if he had given any statements about the accident other than to the policeman and an insurance adjuster. Gaitsch said that he told his wife, a customer he called on after the accident, a person who presented a seminar he attended that evening, and others he talked to at the seminar. Gaitsch never mentioned that he talked to Fisher about the accident, even though Fisher now testifies in an affidavit that he "was directly behind Gaitsch" when Gaitsch started his U-turn, he stopped at the nearby

fuel station when he realized an accident had happened, Gaitsch approached him on foot and told him there had been an accident, and he remained at the scene while the accident was investigated.

Attorney Brendan Doherty represented Zeks from the beginning of the litigation, but another attorney originally represented Gaitsch. Attorney Doherty was substituted as new counsel for Gaitsch in April 2010 (Doc. 56), after Gaitsch responded to the interrogatories and gave his deposition. Doherty represents that Plaintiff never issued written discovery to Zeks. He states that he first became aware of Mr. Fisher's knowledge of the incident on June 22, 2011 when, in response to a requirement that a company representative attend a settlement conference, he was put into contact with Fisher. Doherty says he had never spoken with Fisher before. During the course of their discussion about the settlement conference, Fisher allegedly volunteered that he had been in a car behind Gaitsch at the time of the incident. Fisher said he did not witness the actual impact of the cars, but he did see a portion of Gaitsch's maneuver that led to the collision. Fisher's affidavit omits what he contends to have seen Gaitsch do at that point, but counsel represents in a memorandum (Doc. 98, p. 7) that Fisher's testimony is expected to be a "mirror image" of Gaitsch's testimony "about the few seconds before the accident."

Gaitsch says that, as a layman, he did not believe that Fisher was a "witness" within the meaning of the interrogatory because Fisher did not see the actual impact of the cars. He points out that none of the questions at the deposition specifically asked about additional witnesses to the accident or preceding events. That does not, however, explain why neither

Gaitsch nor Zeks identified Fisher in their initial disclosures as a person likely to have discoverable information that the party may use to support its defense.

Defendants, in asking for leave to amend the pretrial order, describe Fisher's testimony as "critical to the case," but in opposing sanctions they say Fisher "does not know much." Fisher might not know much, but what he claims to know is significant. His testimony would support Gaitsch's claim that he turned from the turn lane, and the parties appear to agree that it is important whether Gaitsch turned from the left travel lane or the center turn lane.

Defendants claim that any harm to Plaintiff will be alleviated because there is time for a deposition of Fisher before trial, and the deposition will not take long given Fisher's limited knowledge. Plaintiff responds that she doubts Fisher was even present at the accident scene and, if he is a proposed witness, she would engage in extensive discovery of what evidence (rental car and hotel receipts, cell phone records, other witnesses, etc.) might establish Fisher's location at that time. Plaintiffs say they would also need to re-depose Gaitsch on why he did not tell the police or his attorney that Fisher was following him and had been at the scene of the accident.

The federal rules and this court's scheduling procedures are designed to avoid surprises. Zeks and Gaitsch have had numerous opportunities and obligations to disclose Fisher as a potential witness. Allowing the amendment at this time would reward Defendants' significant delay and require Plaintiff to incur additional, substantial discovery expenses. Defendants may suffer some harm from this, but it is of their own making. Denial

of leave to amend in these circumstances will not give rise to a manifest injustice, but granting leave to amend in these circumstances would make a mockery of the disclosure requirements of the rules and Scheduling Order. Accordingly, the **Motion for Leave to Amend Pretrial Order (Doc. 93)** is **denied**.

Plaintiffs' **Motion for Sanctions (Doc. 95)** is **granted**, but only to the extent that Fisher will not be allowed to testify, and no other witness may attempt to introduce Fisher's testimony by means of a hearsay exception or otherwise. Plaintiff asks for additional sanctions and a default judgment to deter future concealment of witnesses. All indications are that Fisher would provide testimony favorable to Defendants, so the suppression worked only to harm Defendants in this case. As counsel for Defendants states, it would have been poor strategy to intentionally wait until after the pretrial conference to disclose a witness they believed helpful to their case. The sanctions analysis would likely be different if the undisclosed witness had information favorable to Plaintiffs.

Plaintiffs also make reference to claims of witness bribery, intentionally false testimony, and a false representation that Fisher was at the scene. Those claims cannot be substantiated on the current record.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 1st day of August, 2011.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE